UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Case No.: 8:08-bk-16972-KRM
                                                    Chapter 11
COLONY BEACH AND TENNIS CLUB
ASSOCIATION, INC.,

          Debtor.

_____/

**PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE
UNITED STATES BANKRUPTCY CODE FOR COLONY BEACH AND
TENNIS CLUB ASSOCIATION, INC. DATED AS OF FEBRUARY 6, 2009**

Jeffrey W. Warren, Esq.
Adam Lawton Alpert, Esq.
BUSH ROSS, P. A.
Post Office Box 3913
Tampa, Florida  33601-3913
(813) 224-9255 (telephone)
(813) 223-9620 (telecopy)
Attorneys for the Debtor

# INTRODUCTION

Colony Beach and Tennis Club Association, Inc. hereby proposes the following plan of reorganization (as amended from time to time, and including all addenda, exhibits, schedules and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "**Plan**"), for the reorganization of the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan or as otherwise defined herein. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Disclosure Statement was conditionally approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, properties, and operations, (b) a summary of significant events which have occurred to date in this case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits and schedules and documents attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article 13 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

# ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy

Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of the Plan.

1.1 "**1984 Agreement**" means that certain agreement dated December 1, 1984 by and between the Association, the Partnership, the Colony Beach & Tennis Club, Inc., and Colony Beach, Inc.

1.2 "**Accessory Units**" mean the accessory units located at The Colony that are owned and operated through entities owned or controlled by Klauber, including but not limited to, the restaurant and bar unit, convenience store (Tastebuds), clothing and gift store (Le Tennique), and pro shop.

1.3 "**Administrative Expense**" means (a) any cost or expense of administration of the Reorganization Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the applicable Administrative Expense Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period, and (v) compensation for reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code; (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 5. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period).

1.4 "**Administrative Expense Claim**" means any Claim for the payment of any Administrative Expense.

1.5 "**Administrative Expense Claims Bar Date**" means the date established by an order or orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim that arose or is deemed to have arisen on or after the Petition Date. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application, motion, request or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date

shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claims against the Debtor, or any of its Property, or against its Estate, and such Holders shall not be entitled to participate in any distribution under the Plan on account of any such Administrative Expense Claims.

1.6    "**Affiliate**" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.7    "**Allowed**" means and includes, with respect to any Claim or Interest, (a) any Claim (other than a Disputed Claim) or Interest, proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) or Interest that is listed in the Schedules as liquidated in amount and not disputed or Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (2) the Claim or Interest has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed).

1.8    "**Allowed Amount**" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of punitive damages, penalties or postpetition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.9    "**Assessment**" means a share of the funds which are required for the payment of common expenses of the Debtor, which from time to time is assessed against the Unit Owner. For purposes of the Plan, the making and collection of assessments against the Unit Owners for common expenses shall be pursuant to the Condominium Act of Florida, Florida Statutes §§ 718.101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case. Pursuant to Florida Statute § 718.119, the amount of the Assessment shall in no case exceed the value of the Unit Owner's unit.

1.10    "**Assets**" means all assets of the Debtor's Estate.

1.11    "**Association**" means the Colony Beach and Tennis Club Association, Inc., a Florida not-for-profit corporation.

1.12    "**Available Cash**" means: (i) with respect to the payments to Holders of Allowed Claims to be made on the Effective Date, the amount of Cash determined by the Debtor, in the exercise of its reasonable business judgment after accounting for reserves for operations, and the availability of financing, to be available for distribution to such Holders of Allowed Claims under this Plan; and (ii) with respect to each subsequent distribution to any Holder of an Allowed Claim, the amount of Cash available (including availability under the financing) to make payments or distributions pursuant to this Plan at the time of such distribution.

1.13    "**Avoidance Action**" means a Cause of Action which the Debtor may assert under Sections 541, 542, 543, 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code.

1.14 "**Ballot**" means the ballot accompanying the Disclosure Statement upon which each Holder of a Claim or Interest entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

1.15 "**Bank of America**" means Bank of America, N.A.

1.16 "**Bank of America Loans**" means and includes the loans made by Bank of America evidenced by (a) a note dated September 19, 2000 to Colony Beach, Inc. in the original principal amount of $2,586,827.00, (b) a note dated September 19, 2000 to Colony Beach, Inc. in the original principal amount of $1,700,000.00, and (c) a note dated September 19, 2000 to Colony Beach and Tennis Club, Ltd. in the original principal amount of $2,758,555.00 secured by, among other things, the Accessory Units and the Recreational Facilities.

1.17 "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.18 "**Bankruptcy Court**" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.19 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.20 "**Bar Date**" means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against or proofs of Interest in the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided however, that, when used in the Plan, the term "Bar Date" shall not include the Administrative Expense Claims Bar Date.

1.21 "**Business Day**" means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.22 "**Cash**" means lawful currency of the United States of America and its equivalents. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

1.23 "**Causes of Action**" means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.24 "**Claim**" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, Contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, Contingent, matured, unmatured, disputed, undisputed, secured or unsecured. The term "Claim" shall be broadly construed herein to include all manner and type of claim, whenever and wherever such claim may arise.

1.25 "**Class**" means a category of Holders of Claims or Interests as set forth in Article 3 of the Plan.

1.26 "**Clerk**" means the Clerk of the Bankruptcy Court.

1.27 "**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, 33602.

1.28 "**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.29 "**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

1.30 "**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.31 "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code.

1.32 "**Contingent**" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.33 "**Creditor**" has the same meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against property of the Debtor as defined in Section 102(2) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, Insider Claims and General Unsecured Claims.

1.34 "**Debtor**" means Colony Beach and Tennis Club Association, Inc., a Florida limited liability company.

1.35 "**Debtor in Possession**" means the Debtor in the capacity, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.36 "**Declaration**" means that certain Declaration of Condominium of Colony Beach & Tennis Club dated November 29, 1973 recorded in the Official Records of the Clerk of the Court for Sarasota County, Book 1025, Page 200 and subsequently amended by that certain

amendment dated October 29, 1981 recorded in Official Records of the Clerk of the Court for Sarasota County, Book 1478, Page 145.

1.37 "**Disallowed Claim**" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

1.38 "**Disbursing Agent**" means a Person selected by the Reorganized Debtor pursuant to the Plan (with approval of the Bankruptcy Court), as agent of the Bankruptcy Court, to hold and distribute the consideration to be distributed to the Holders of Allowed Claims under the Plan.

1.39 "**Disclosure Statement**" means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code (including all annexes, exhibits and schedules attached thereto or referenced therein), as such disclosure statement may be amended or modified from time to time.

1.40 "**Disclosure Statement Approval Order**" means the Order approving the Debtor's Disclosure Statement and fixing the time for filing acceptances or rejections of the Debtors' Plan, combined with notice of the hearing on Confirmation of Plan and other related matters entered in the Reorganization Case.

1.41 "**Disputed Claim**" means any Claim (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) or (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled or denied by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

1.42 "**Distribution Date**," when used with respect to an Allowed Claim, means the date that is as soon as reasonably practicable after the later of: (a) the Effective Date or (b) the first (1st) Business Day of the next calendar quarter after the date upon which the Claim becomes Allowed, unless the Claim becomes Allowed within fifteen (15) days before the first (1st)

Business Day of the next calendar quarter, in which case the Distribution Date shall be the first (1st) Business Day of the next succeeding calendar quarter.

1.43 "**District Court**" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.44 "**Docket**" means the docket in the Reorganization Case maintained by the Clerk.

1.45 "**Effective Date**" means, and shall occur on, the first (1st) Business Day immediately following the first date upon which all of the conditions to occurrence of the Effective Date contained in Section 10.2 of the Plan have been satisfied or waived by the Debtor; provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the sole option of the Debtor unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date shall be the first (1st) Business Day immediately following such date as is thirty (30) calendar days following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and, further provided, that the Effective Date shall not occur until all of the conditions to occurrence of the Effective Date set forth in Section 10.2 of the Plan have been satisfied or waived by the Debtor.

1.46 "**Entity**" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.47 "**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

1.48 "**Estimated Amount**" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Sections 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Sections 1129(b)(1) and (2) of the Bankruptcy Code.

1.49 "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of a Claim against the Debtor.

1.50 "**Final Order**" means an Order, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.51 "**Final Decree Date**" means the date on which a Final Order, obtained after a hearing on notice to all Entities entitled to Notice and such other entities as the Bankruptcy Court may direct, has been entered determining that the Reorganization Case should be closed.

1.52 "**General Partner**" means Resorts Management, Inc., a Florida corporation, the general partner of the Partnership.

1.53    "**General Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Insider Claim or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) any portion of a Claim to the extent the value of the Creditor's interest in the applicable Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claims arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as a General Unsecured Claim elsewhere in the Plan.

1.54    "**General Unsecured Creditor**" means any Creditor holding a General Unsecured Claim.

1.55    "**Governmental Unit**" means any federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

1.56    "**Holder**" means an Entity holding a Claim or Interest.

1.57    "**Hotel**" means the hotel business operated by the Partnership at the Colony.

1.58    "**Impaired**" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.59    "**Insider Claim**" means any Claim of any Insider, including (a) any Claim relating to the 1984 Agreement or arising from the rejection of the 1984 Agreement, (b) any Claim relating to the Recreational Facilities Lease or arising from the rejection of the Recreational Facilities Lease, (c) any Claim relating to the operations of the Hotel, and (d) any Claim designated as an Insider Claim elsewhere in the Plan.

1.60    "**Insiders**" has the meaning ascribed to it in Section 101(31) of the Bankruptcy Code. For purposes of the Plan, the term "Insiders" shall mean, individually or collectively as the context requires,  (a) Dr. Murray J. Klauber, (b) Resorts Management, Inc., (c) Colony Beach & Tennis Club, Inc., (d) Colony Beach Tennis Shop, (e) Colony Beach, Inc., (f) Le Tennique, Inc., (g) Colony Beach & Tennis Club, Ltd., (h) the Lessors, and (i) any other entity owned or controlled by Klauber.

1.61    "**Interest**" means the membership interest in the Association of a Unit Owner.

1.62    "**Klauber**" means Dr. Murray J. Klauber, the principal of the General Partner.

1.63    "**Lessors**" means, collectively, Colony Beach & Tennis Club, Inc. (45%), Colony Beach, Inc. (35%), William W. Merrill, as Trustee of the William W. Merrill Revocable Trust, dated May 13, 2008 (5%), and Carolyn L. Field, as Trustee of the Carolyn L. Field Family Trust (15%) as the successors in interest to Colony Beach Associates, Ltd. under the Recreational Facilities Lease and who hold the indicated percentage interest in the Recreational Facilities Lease.

1.64    "**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor, any assets of the Debtor, the business or operations of the Debtor, the Reorganization Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

1.65    "**Lien**" means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

1.66    "**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Reorganization Case.

1.67    "**Order**" means an order or judgment of a court.

1.68    "**Partnership**" means Colony Beach & Tennis Club, Ltd., a Florida limited partnership.

1.69    "**Partnership Agreement**" means that certain Certificate and Agreement of Limited Partnership of Colony Beach & Tennis Club, Ltd., dated December 27, 1973 and filed December 28, 1973, as amended from time to time.

1.70    "**Person**" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.71    "**Petition Date**" means October 29, 2008.

1.72    "**Plan**" means the Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code for Colony Beach and Tennis Club Association, Inc. dated as of February 6, 2009, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

1.73    "**Plan Documents**" means all documents, attachments and exhibits, as the same may be amended, modified or supplemented from time to time, that aid in effectuating the Plan, which documents, attachments and exhibits shall be filed by the Debtor with the Bankruptcy Court on or before the Plan Documents Filing Date.

1.74 "**Plan Documents Filing Date**" means the date for the filing of the Plan Documents which shall be either: (a) the date, as determined by the Debtor, that is as soon as practicable, but that in no event is later than five (5) calendar days before the commencement of the Confirmation Hearing or (b) such other date (or dates) as determined by the Bankruptcy Court.

1.75 "**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

1.76 "**Prepetition**" means arising or accruing prior to the Petition Date.

1.77 "**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, an Insider Claim or a General Unsecured Claim.

1.78 "**Priority Tax Claim**" means a Claim of a governmental unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, an Insider Claim or a General Unsecured Claim.

1.79 "**Professional**" means any professional employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

1.80 "**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

1.81 "**Pro Rata Share**" means the same proportion an Allowed Claim in a particular Class bears to the total amount of Allowed Claims in such Class.

1.82 "**Proof of Claim**" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.83 "**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

1.84 "**Proponent**" means the Debtor as the proponent of the Plan.

1.85 "**Pro Rata Share**" means, with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

1.86 "**Recreational Facilities**" means the premises which are the subject of the Recreational Facilities Lease, including four parcels of land and two condominium units, a

swimming pool, twelve tennis courts, a locker room condominium unit and a meeting room and clubhouse condominium unit..

1.87 "**Recreational Facilities Lease**" means that certain Recreational Facilities Lease dated November 29, 1973 by and between Colony Beach Associates, Ltd. and the Association for the use of the Recreational Facilities.

1.88 "**Rejected Contracts**" has the meaning ascribed to such term in Article 8 of the Plan.

1.89 "**Released Parties**" means the Debtor, the Reorganized Debtor, and its directors, officers, employees, agents, representatives, attorneys, accountants, and Professionals (acting in such capacity).

1.90 "**Reorganization Case**" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

1.91 "**Reorganized Debtor**" means the Association on and after the Effective Date as reorganized pursuant to the Plan.

1.92 "**Reserved Claims**" means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless a Proof of Claim was timely filed with respect to such Claim, in which case in the face amount of such Proof of Claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

1.93 "**Schedules**" means the schedules, statements and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.94 "**Secured Claim**" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the assets or property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.95 "**Statutory Fees**" means any fees or charges assessed against the Debtor's Estate under Section 1930, chapter 123 of title 28 of the United States Code.

1.96 "**The Colony**" means that certain condominium identified as Colony Beach & Tennis Club, a Condominium Resort Hotel, located at 1620 Gulf of Mexico Drive, Longboat Key, Sarasota County, Florida.

1.97    "**Unimpaired**" means any Claim that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.98    "**Unit Owner**" means any Entity or Person who owns, in whole or in part, one or more of the 237 condominium units at The Colony, as such condominium units are designated in the Declaration.

1.99    "**United States Trustee**" means the Office of the United States Trustee for the Middle District of Florida.

1.100    "**Voting Deadline**" means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

1.101    "**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

## ARTICLE 2

## TREATMENT OF ADMINISTRATIVE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 2.

2.1    <u>Administrative Expense Claims</u>.    Each Holder of an Allowed Administrative Expense Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Administrative Expense Claim, without interest, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or such other treatment as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor; provided, however, that Allowed Administrative Expense Claims representing (a) postpetition liabilities incurred in the ordinary course of business by the Debtor and (b) postpetition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

All fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee no later than thirty (30) days following the Effective Date. At the time of such payment, the Debtor shall also provide to the United States Trustee an appropriate report indicating the disbursements for the relevant periods. Following the Effective Date, the Debtor shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements made by the Debtor. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Reorganization Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii)

the entry of an order by the Bankruptcy Court dismissing the Reorganization Case or converting the Reorganization Case to another chapter under the Bankruptcy Code.

2.2    Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Priority Tax Claim, without post-petition interest or penalty, (a) in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or (b) in regular Cash installment payments over a period not exceeding five years from the Petition Date of a total value, as of the Effective Date, equal to the Allowed Amount of such Claim.  The obligations under this Section 2.2 in respect of any Allowed Priority Tax Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefor.

# ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    Classification.

(a)    General.  Pursuant to Section 1122 of the Bankruptcy Code, Section 3.2 herein sets forth a designation of Classes of Claims and Interests.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.

(b)    Unclassified Claims.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the Classes established in Section 3.2 herein.  The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article 2 of the Plan.

3.2    Classes.  For the purposes of the Plan, the Claims against, or Interests in, the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code:

(a)    Claims and Interests.  The following constitute the Classes of Claims and Interests:

(1)    Class 1 - Priority Claims.  Class 1 consists of all Priority Claims.

(2)    Class 2 - Secured Claims. Class 2 consists of all Secured Claims not otherwise classified in the Plan.

(3)    Class 3 - Insider Claims.  Class 3 consists of the Claims of the Insiders including (i) any Claims of the Partnership arising under Section 502(g) of the Bankruptcy Code as a result of the Debtor's rejection of its obligations under the Partnership Agreement pursuant to Section 365(a) of the Bankruptcy Code, (ii) any Claims of the Lessors

arising under and as limited by Sections 502(b)(6) and (g) of the Bankruptcy Code as a result of the Debtor's rejection of the Recreational Facilities Lease pursuant to Section 365(a) of the Bankruptcy Code, and (iii) the Claims of the Partnership, the Colony Beach & Tennis Club, Inc., and Colony Beach, Inc. arising under Section 502(g) of the Bankruptcy Code as a result of the Debtor's rejection of its obligations under the 1984 Agreement pursuant to Section 365(a) of the Bankruptcy Code.

        (4)     <u>Class 4 - General Unsecured Claims</u>. Class 4 consists of all General Unsecured Claims.

        (5)     <u>Class 5 - Interests in the Association</u>. Class 5 consists of all Interests in the Association.

## ARTICLE 4

### IDENTIFICATION OF CLAIMS AND INTERESTS
### IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1    <u>Classes of Claims Not Impaired by the Plan</u>. Class 1 and Class 2 are Unimpaired by the Plan. Under Section 1126(f) of the Bankruptcy Code, the Holders of those Claims are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those Holders shall not be solicited.

4.2    <u>Classes of Claims Impaired by the Plan</u>. Classes 3 through 5 are Impaired by the Plan. The Holders of Claims and Interests in Classes 3 through 5 are entitled to vote to accept or reject the Plan.

## ARTICLE 5

### TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS

The Allowed Claims and Allowed Interests, as classified in Article 3 herein, shall be satisfied in the manner set forth in this Article 5. The treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Interests (of any nature whatsoever).

5.1    <u>Claims and Interests</u>. The following constitutes the treatment under the Plan of the Allowed Claims and Allowed Interests:

        (a)     <u>Class 1 - Priority Claims</u>. Class 1 consists of all Priority Claims. Each Holder of an Allowed Priority Claim shall receive (1) the Allowed Amount of such Holder's Allowed Priority Claim, in Cash, on the Distribution Date, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (2) such other treatment as may be agreed to in writing by such Holder and the Debtor, or (3) payment as otherwise ordered by a Final Order of the Bankruptcy Court.

(b)    <u>Class 2 - Secured Claims</u>.    Class 2 consists of all Secured Claims not otherwise classified under the Plan. Each Holder of an Allowed Secured Claim in Class 2 shall receive either the collateral securing such an Allowed Claim in Class 2 or the value of such collateral within sixty (60) days following the later of the Effective Date or the date that such collateral is valued pursuant to a Final Order.

(c)    <u>Class 3 - Insider Claims</u>.    Class 3 consists of all Claims of the Insiders. On the Effective Date, each Holder of an Allowed Class 3 Insider Claim shall, at the election of the Debtor, either (i) receive such other treatment as the Debtor and the Holder of such Claim shall agree upon in writing; or (ii) (1) retain any Lien determined by Final Order to secure the Allowed Claim, and (2) receive a promissory note from the Reorganized Debtor with the following terms:

| | |
|---|---|
| Principal Amount: | The Allowed Amount of each Allowed Class 3 Insider Claim. |
| Interest Rate: | The rate established for 5-year Treasury Bills as of the Effective Date or such other rate as may be agreed upon by the Holder of such Allowed Insider Claim and the Debtor. |
| Payment Terms: | The Principal Amount and accrued interest shall be paid in forty (40) quarterly installments beginning on the Distribution Date. Principal is prepayable at any time with no penalty or premium. |
| Collateral: | Each Holder of an Allowed Class 3 Insider Claim shall retain its Lien against the collateral securing its Claim to the same extent, validity and priority that such Liens had prior to the Petition Date. |

| | |
|---|---|
| Events of Default: | If the Reorganized Debtor fails to make any payment to a Holder of an Allowed Class 3 Insider Claim as required hereunder within ten (10) days of such payment becoming due, the Reorganized Debtor shall be in default. Upon such default, the Holder of such Allowed Class 3 Insider Claim shall be entitled to send written notice to the Reorganized Debtor of the default and, if the default is not cured within five (5) business days from the date of the notice, the Holder of such Allowed Class 3 Insider Claim shall be entitled to enforce all rights and remedies it possesses under applicable non-bankruptcy law against the Reorganized Debtor or the collateral securing its Claim without the need of further relief from the Bankruptcy Court. |

(d)     <u>Class 4 - General Unsecured Claims</u>.   Class 4 consists of the General Unsecured Claims not otherwise classified in Classes 1 through 3 above.  On the Effective Date, each Holder of an Allowed Class 4 General Unsecured Claim shall, at the election of the Debtor, either (i) receive such other treatment as the Debtor and the Holder of such Claim shall agree upon in writing; or (ii) receive a promissory note from the Reorganized Debtor with the following terms:

| | |
|---|---|
| Principal Amount: | The Allowed Amount of each Allowed Class 4 General Unsecured Claim, as of the Petition Date. |
| Payment Terms: | The Principal Amount shall be paid in twelve (12) equal quarterly installments, without interest. beginning on the Distribution Date. Principal is prepayable at any time with no penalty or premium. |
| Events of Default: | If the Reorganized Debtor fails to make any payment to a Holder of an Allowed Class 4 General Unsecured Claim as required hereunder within ten (10) days of such payment becoming due, the Reorganized Debtor shall be in default. Upon such default, the Holder of each Allowed Class 4 General Unsecured Claim shall be entitled to send written notice to the Reorganized Debtor of the default, and if the default is not cured within five (5) business days from the date of the notice, the Holder of each Allowed Class 4 General Unsecured Claim shall be entitled to enforce all rights and remedies it possesses under applicable non-bankruptcy law against the Reorganized Debtor without the need of further relief from the |

(e)    Class 5 - Interests in the Association.  Class 5 consists of all Interests in the Association.  On the Effective Date, each Holder of an Interest in Class 5 shall retain such interest and shall retain unaltered the legal, equitable, and contractual rights to which such Interest entitles such Holder. Provided, however, such Holder of an Interest in Class 5 shall be obligated to pay the Assessment necessary to fund the Plan and satisfy any obligation of the Reorganized Debtor to pay Allowed Claims.

## ARTICLE 6

## MEANS FOR EXECUTION OF PLAN

6.1    Overview.  As more fully discussed below, the Debtor exercised its business judgment and  rejected certain burdensome and disputed executory contracts and unexpired leases. Unless consensually resolved, the Reorganized Debtor will vigorously pursue monetary recoveries from the Insiders who are parties to such disputed executory contracts and unexpired leases. This Plan contemplates the restructuring and the treatment of the Association's obligations in accordance with the Bankruptcy Code resulting in the payment in full over time of any and all Allowed Claims against the Debtor in accordance with the Plan.

6.2    Plan Funding.  The Reorganized Debtor will fund the Plan from Available Cash, Assessments of the Unit Owners, and litigation recoveries from the Insiders or a combination thereof, as set forth in this Plan.

6.3    Continued Corporate Existence. The Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a not-for-profit corporation under Florida law and pursuant to its articles of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles of incorporation or amended bylaws. Notwithstanding the foregoing, the Debtor may change its status of organization or formation or alter its corporate structure (either through mergers, consolidations, restructurings, conversions, dispositions, liquidations, dissolutions, or otherwise) after the Effective Date, as may be determined by the Reorganized Debtor to be appropriate. In each case in which the surviving, resulting, or acquiring entity shall perform the obligations of the Reorganized Debtor under the Plan to pay or otherwise satisfy all Allowed Claims.

6.4    Provisions Concerning Plan Distributions

(a)    Distributions.  The Reorganized Debtor shall make all distributions required under the Plan.

(b)    Date of Distributions.  Distributions shall be made on the Distribution Date, unless otherwise provided in the Plan Documents or as may be ordered by the Bankruptcy Court.  Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made either (i) on the Distribution Date or (ii) as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date, except as otherwise provided for herein, or except as may be ordered by the Bankruptcy Court.

6.5     Transactions on Business Days.  If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

6.6     Disputed Claims.

(a)     Objection Deadline.  As soon as practicable, but in no event later than sixty (60) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

(b)     Prosecution of Objections.  On and after the Effective Date, only the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle or withdraw objections to Disputed Claims.  On and after the Effective Date, the Reorganized Debtor shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

(c)     Service of Objections. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effectuates service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Reorganization Case on behalf of the Holder of a Claim.

(d)     Fixing or Liquidation of Claims. Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Debtor or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

6.7     Withholding of Taxes.  The Reorganized Debtor shall withhold from any assets and property distributed under the Plan any assets or property which must be withheld for foreign, federal, state or local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

6.8     Unclaimed Property.  Any Cash, assets or other property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit

entitled thereto as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the distribution shall become vested in the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

6.9 <u>Non-Negotiated Checks</u>. If a Holder of an Allowed Claim fails to negotiate a check issued to such Holder pursuant to the Plan within one (1) year of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed property in respect of such Holder's Allowed Claim and shall be vested in, and transferred to, the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such Holder's Claim shall no longer be deemed to be Allowed and such Holder shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

**6.10 <u>Exoneration and Reliance</u>. The Released Parties shall not be liable to any Holder of a Claim or Interest or other party with respect to any action, omission, forbearance from action, decision or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtor; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (c) the administration of the Plan or the assets and property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence. The Debtor and the Reorganized Debtor may rely upon the opinions of counsel, certified public accountants and other experts or professionals employed by the Debtor and the Reorganized Debtor, respectively, and such reliance shall conclusively establish good faith and the absence of willful misconduct. In any action, suit or proceeding by any Holder of a Claim or Interest or other party in interest contesting any action by, or non-action of, the Debtor and the Reorganized Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that Released Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.**

6.11 <u>Form of Payments</u>. Except where the Plan contemplates deferred payment or delivery of property or securities, payments to be made by the Disbursing Agent pursuant to the Plan shall be made in Cash or by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.12    Further Authorizations.  The Debtor and the Reorganized Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions and rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

6.13    Plan Documents.  By the Plan Documents Filing Date, the Debtor shall file with the Bankruptcy Court unexecuted copies of the Plan Documents, together with all necessary exhibits or schedules thereto, as may be necessary or appropriate to effectuate the terms and conditions of the Plan.  Any party in interest may review the Plan Documents on any Business Day during normal business hours (9:00 a.m. to 4:30 p.m. Eastern Standard Time) at the offices of Bush Ross, P.A., 1801 N. Highland Street, Tampa, Florida 33602.

6.14    Section 1146 Exemption.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtors pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.15    Securities Exemption.  Except with respect to an entity that is an underwriter as defined in subsection (b) of Section 1145 of the Bankruptcy Code, Section 5 of the Securities Act of 1933 and any state or local law requiring registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to the issuance of the promissory notes under the Plan or the Plan Documents pursuant to Section 1145 of the Bankruptcy Code.

6.16    Recordable Order.  The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

6.17    Effectuating Documents and Further Transactions.  The executive officers of the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

6.18    Corporate Action.  All matters provided for under the Plan and under the Plan Documents involving the organizational structure of the Debtor or the Reorganized Debtor or action to be taken by, or required of the Debtor or the Reorganized Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any of such entities.

6.19    Extinguishment of Guarantees.  On the Effective Date, and in accordance with the terms of the Plan, all guarantees of collection, payment or performance made by the Debtor shall be discharged, released, extinguished and of no further force or effect.

6.20    Management of the Reorganized Debtor.  On and after the Effective Date, the business and affairs of the Reorganized Debtor shall be managed by the directors, officers, and managers elected, appointed or otherwise permitted under the Reorganized Debtor's organizational documents.  It is anticipated that the duly elected board of directors of the Association will continue to serve as the board of directors of the Reorganized Debtor for the remainder of the applicable terms of such directors as existed immediately prior to the Effective Date.  The Reorganized Debtor shall have full control and authority over the Property of the Estate of the Association, without the need for Bankruptcy Court approval pursuant to Section 363 or 330 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or United States trustee control or oversight during a Chapter 11 case, including but not limited to policy making, day-to-day operations, financing, transactional, corporate governance, and any and all other corporate activity.

## ARTICLE 7

## EFFECTS OF PLAN CONFIRMATION

7.1    Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan discharges the Debtor from (1) all Claims (including, but not limited to, claims based upon any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act or omission of the Debtor) against, liabilities of (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code), Liens on, obligations of, and Interests in the Debtor or the assets and properties of the Debtor, whether known to, unknown or knowable by the Holder thereof and (2) all causes of action, whether known to, unknown or knowable by the Holder thereof, either directly or derivatively through the Debtor, against successors and assigns of the Debtor, based on the same subject matter as any Claim or Interest, in each case regardless of whether or not a Proof of Claim or Proof of Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Interest voted on or accepted the Plan.  Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, Liens on, obligations of and Interests in the Debtor or the assets and properties of the Debtor.  In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtor and its assets and properties, as well as any proceedings not yet instituted against the Debtor or its assets and properties, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim or Interest or the commencement of legal action or process against the Debtor or against the property of the Debtor.

Furthermore, but in no way limiting the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any distribution pursuant to the Plan shall be presumed conclusively to have released the Debtor and successors and assigns of the Debtor, from any cause of action based on the same subject matter as the Claim or Interest on which the distribution is received. This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any distribution pursuant to the Plan.

**7.2     General Injunction.  Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor and its Property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor and its Property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, and its Property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.**

**7.3     Injunction in Favor of Unit Owners.  As long as the Debtor is not in default in the payments to Allowed Claims called for under the Plan, the Holders of Allowed Claims shall be permanently enjoined and forever barred from taking any of the following actions:**

**(a)     commencing or continuing in any manner any action or other proceeding against the Unit Owners;**

**(b)     enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Unit Owners;**

**(c)     creating, perfecting or enforcing any Lien or encumbrance against the Unit Owners;**

**(d)** asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Unit Owners;

**(e)** commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or

**(f)** interfering with or in any manner whatsoever disturbing the rights and remedies of the Unit Owners.

**The Debtors and the Unit Owners shall have the right to independently seek enforcement of this injunction provision. This injunction provision is an integral part of the Plan and is essential to its implementation. This injunction provision is a condition precedent to the Unit Owners accepting and paying the Assessments necessary to fund the payments under the Plan to the Holders of Allowed Claims.**

**This injunction provision shall not be interpreted to protect the Insiders with respect to obligations to Bank of America or to preclude Bank of America from enforcing any rights and remedies relating to the Bank of America Loans.**

7.4     <u>Term of Injunctions and the Automatic Stay</u>.  Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, the injunctions described in Sections 7.1, 7.2 and 7.3 herein shall remain in full force and effect following the Effective Date.  All other injunctions or automatic stays provided for in the Reorganization Case pursuant to Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

7.5     <u>No Liability for Tax Claims</u>.  Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefor, no Claim of such authority shall be Allowed against the Debtor or the Reorganized Debtor for taxes, penalties or interest arising out of the failure, if any, of the Debtor to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

7.6     <u>Vesting</u>.  Except as otherwise expressly provided in the Plan, on the Effective Date, the Reorganized Debtor shall be vested with all of the Assets and property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

7.7     <u>Disallowed Claims and Disallowed Interests</u>.  On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any Order creating a disallowed Claim or a disallowed Interest which is not a Final Order as of the Effective Date solely because of a Person's or Governmental Unit's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Interests to the extent such Claims and

Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest; and (b) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

7.8 <u>Retention and Enforcement of Claims or Interests</u>. Pursuant to Section 1123(b)(4) of the Bankruptcy Code, the Reorganized Debtor shall acquire and have the exclusive right to enforce against any Person or Governmental Unit any and all causes of action and rights of the Debtor that arose both before and after the Petition Date, including the rights and powers of a trustee and debtor in possession and all causes of action granted pursuant to and still existing under Sections 502, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

The Debtor is not currently in a position to express an opinion on the merits of any Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor prepetition or that received payments from the Debtor prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that they will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. Additionally, the Plan does not, and is not intended to, release any Causes of Action or objections to Claims, and all such rights are specifically reserved in favor of the Reorganized Debtor. Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless expressly released. As such, Creditors are cautioned not to rely on (a) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (b) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Reorganized Debtor does not possess or does not intend to prosecute a particular Claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Estate and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata , collateral estoppel or

other preclusive effect which would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

7.9    No Successor Liability.  Except as otherwise expressly provided in the Plan, the Reorganized Debtor does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify creditors against or otherwise have any responsibilities for, any liabilities or obligations of the Debtor or its Affiliates, fixed, Contingent or otherwise, known or unknown, relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on or after the Effective Date.  The Reorganized Debtor is not, nor shall it be, a successor to the Debtor or its Affiliates by reason of any theory of law or equity, and it shall not have any successor or transferee liability of any kind or character, except that Reorganized Debtor shall assume the obligations specified in the Plan and the Confirmation Order.

7.10    Regulatory or Enforcement Actions. Nothing in this Plan shall restrict any federal governmental or regulatory agency from pursuing any police or regulatory enforcement action against any party, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. No federal governmental or regulatory agency may pursue any action or proceeding of any type to recover monetary claims, damages, or penalties against the Debtor for any act or omission occurring prior to the Effective Date.

## ARTICLE 8

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.

(a)    Rejection.  Any executory contracts or unexpired leases that (a) have not been assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to assume on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor. The Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

(b)    Assumption.  Notwithstanding anything in Section 8.1(a) to the contrary, the Debtor may seek to assume certain executory contracts and unexpired leases that will be identified in any motion to assume pending on the Confirmation Date.

(c)    Reservation.  Notwithstanding anything in Sections 8.1(a) and 8.1(b) to the contrary, this Section 8.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

8.2    Cure.  At the election of the Debtor, any monetary defaults under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the

Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal quarterly installments commencing on the Effective Date and continuing for one year with interest payable with the final installment and with principal prepayable at any time with no penalty or premium; or (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (i) the amount of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

8.3 <u>Claims under Rejected Executory Contracts and Unexpired Leases</u>. The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the Confirmation Date. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, an Allowed Claim and the Holder thereof shall receive distributions as a Holder of an Allowed Claim in Class 3 if the Holder is an Insider or Class 4 if the Holder is not an Insider pursuant to the Plan. The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

## ARTICLE 9

## EFFECTUATION AND SUPERVISION OF THE PLAN

9.1 <u>Jurisdiction</u>. Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

9.2 <u>General Retention</u>. Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the right of the Debtor to object to or re-examine such Claim, in whole or in part.

9.3     Specific Purposes.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of the Plan:

(a)     to modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(b)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents and such other documents may be substantially realized thereby;

(c)     to assure the performance by the Disbursing Agent of its obligations to make distributions under the Plan and the Plan Documents;

(d)     to enforce and interpret the terms and conditions of the Plan and the Plan Documents;

(e)     to enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights and powers of the Reorganized Debtor;

(f)     to enforce and interpret the terms and conditions of the Plan Documents;

(g)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor or its Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

(h)     to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

(i)     to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, the Reorganized Debtor or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives and agents;

(j)     to determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(k)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)     to consider and act on the compromise and settlement of any Claim against or Interest in the Debtor or its Estate;

(m)    to determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(n)    to enter such Orders as are necessary to implement and enforce the injunction described in Section 7.1 herein;

(o)    to enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case;

(p)    to enter an order concluding and terminating the Reorganization Case; and

(q)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

9.4    Closing of the Reorganization Case.  In addition to the retention of jurisdiction set forth in Articles 9.1, 9.2 and 9.3, the Bankruptcy Court shall retain jurisdiction of the Reorganization Case to enter an order reopening the Reorganization Case after it has been closed.

# ARTICLE 10

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

10.1    Conditions to Confirmation.  Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor.  These confirmation conditions are as follows:

(a)    Disclosure Statement.  The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

(b)    Confirmation Order.  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtor.

10.2    Conditions to Effectiveness.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor:

(a)    Final Confirmation Order.  The Confirmation Order (and such related Orders) shall have become a Final Order.

(b)    Corporate Documents.  The Plan Documents and the other applicable corporate documents necessary or appropriate to the implementation of the Plan shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities.

(c)    United States Trustee's Fees.  The fees of the United States Trustee for the Middle District of Florida then owing by the Debtor shall have been paid in full.

10.3    Waiver.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtor. The conditions precedent set forth in Article 10.1 and Article 10.2 of the Plan may be waived, in whole or in part, by the Debtor, without notice to the Bankruptcy Court or a hearing, and without notice to Creditors and parties in interest.

# ARTICLE 11

## ACCEPTANCE OR REJECTION OF PLAN

11.1    Each Impaired Class Entitled to Vote Separately.  Each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

11.2    Class Acceptance Requirement.    Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, the Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

11.3    Confirmation Over Objections.    If any Impaired Class of Claims fails to accept the Plan by the requisite majority, and the Plan is not revoked or withdrawn, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any nonaccepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Interest. The Debtor further requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any

provision of the Plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Claims and the amount of any Claims, the Holders of which have not accepted the Plan.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

12.1    Revocation of Plan.    The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

12.2    Headings.    Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

12.3    Due Authorization by Holders of Claims.    Each and every Holder of a Claim who elects to participate in the distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtor, the distributions provided for in the Plan and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

12.4    Payment on Distribution Dates.    Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall, instead, be made, without interest, on the next Business Day thereafter.

12.5    Modification of Payment Terms.    The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

12.6    Entire Agreement.    The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.  No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

12.7    Administrative Claims Bar Date.    Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Claims, which bar date shall be thirty (30) days after the Effective Date.  Claimants holding Administrative Claims against the Debtor not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth such date and constitute notice of the Administrative Claims bar date.  The Reorganized Debtor and any other party-in-interest

shall have sixty (60) days after the Administrative Claims bar date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court.

12.8    <u>Confirmation Order</u>.   In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

12.9    <u>Governing Law</u>.   Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

12.10    <u>Severability</u>.  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.11    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, the day of the act, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight (8) days, intermediate days that are not Business Days shall be excluded in the computation.

12.12    <u>No Interest</u>.  Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date is to be Allowed on any Claim.

12.13    <u>No Attorneys' Fees</u>.  No attorneys' fees shall be paid with respect to any Claim except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

12.14    <u>Addresses for Distributions to Holders of Allowed Claims</u>.  Unless otherwise provided in the Plan, the Plan Documents or a Final Order of the Bankruptcy Court, distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  The Debtor, the Reorganized Debtor or the Disbursing Agent shall not be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

12.15 <u>Consent to Jurisdiction</u>.  Upon default under the Plan, the Reorganized Debtor consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to such default.

12.16 <u>Setoffs</u>.  Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

12.17 <u>Successors and Assigns</u>.  The rights, duties and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

12.18 <u>Reservation</u>.  The Plan provides for the resolution, settlement and compromise of Claims against and Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date. If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full.  Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such concession.

12.19 <u>Confirmation Order and Plan Control</u> To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Plan controls over the Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan.

## ARTICLE 13

## MODIFICATION OF PLAN

13.1 <u>Modification of Plan</u>.  The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the Holders of Allowed Claims are not materially and adversely affected.

[Remainder of page intentionally left blank]

# ARTICLE 14

## NOTICES

14.1  <u>Notices</u>.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested, to:

If to the Debtor:

Colony Beach and Tennis Club
Association, Inc.
1620 Gulf of Mexico Drive
Sarasota, Florida 34228

With mandatory copies to:

Bush Ross, P.A.
Post Office Box 3913
Tampa, Florida 33601-3913
Attn: Jeffrey W. Warren, Esq.

Dated:  Tampa, Florida
        February 6, 2009

**COLONY BEACH AND TENNIS CLUB
ASSOCIATION, INC.**

By: _W. Andrew Adams_
      W. Andrew Adams, President

587517.04